IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CATINA FRANKLIN TOLLETT, | § | |
| | § | |
| *Plaintiff,* | § | SA-23-CV-00490-ESC |
| | § | |
| vs. | § | |
| | § | |
| KILOLO KIJAKAZI, | § | |
| | § | |
| *Defendant.* | § | |

**ORDER**

This order concerns Plaintiff Catina Franklin Tollett's request for review of the administrative denial of her applications for a period of disability and disability insurance benefits ("DIB") under Title II and for supplemental security income ("SSI") under Title XVI. 42 U.S.C. §§ 405(g), 1383(c)(3). This Court has jurisdiction to review a decision of the Social Security Administration pursuant to 42 U.S.C. § 405(g). The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(c)(1), as all parties have consented to the jurisdiction of a United States Magistrate Judge [#8].

Plaintiff contends that the Administrative Law Judge ("ALJ") erred in failing to account for the "total limiting effects" of her severe and non-severe impairments. After considering Plaintiff's Opening Brief [#10], Defendant's Brief in Support of the Commissioner's Decision [#12], the transcript ("Tr.") of the Social Security Administration proceedings [#5], the other pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, the parties' oral arguments at the Court's hearing, and the entire record in this matter, the Court concludes that the Commissioner—through the ALJ—did not commit any reversible error in the

underlying administrative proceedings and substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity ("RFC") to perform work in the national economy.

## I. Legal Standards

In determining if a claimant is disabled, the Commissioner uses a sequential, five-step approach, which considers whether: (1) the claimant is currently engaged in substantial gainful activity, (2) the claimant has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents the claimant from doing any relevant work. *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018). If the claimant gets past the first four stages, then the burden shifts to the Commissioner on the fifth step to prove the claimant's employability. *Id.* A finding that a claimant is not disabled at any point in the five-step review is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987); *see also* 20 C.F.R. § 404.1520(a)(4).

In reviewing the denial of benefits, the Court is limited to a determination of whether the Commissioner, through the administrative law judge's decision,[1] applied the proper legal standards and whether the Commissioner's decision is supported by substantial evidence. *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla, less than preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa v. Sullivan*, 895 F.2d 1019, 1021–22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164

[1] In this case, because the Appeals Council declined to review the ALJ's decision, the decision of the ALJ constitutes the final decision of the Commissioner, and the ALJ's factual findings and legal conclusions are imputed to the Commissioner. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005); *Harris v. Apfel*, 209 F.3d 413, 414 (5th Cir. 2000).

(5th Cir. 1983)). The Court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Conflicts in the evidence and credibility assessments are for the Commissioner, not the Court, to resolve. *Id.* While substantial deference is afforded the Commissioner's factual findings, the Commissioner's legal conclusions, and claims of procedural error, are reviewed *de novo*. *See Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

## II. Factual and Procedural Background

Plaintiff Catina Franklin Tollett filed her applications for DIB and SSI in July of 2020, alleging disability beginning March 1, 2020. (Tr. 212–22.) At the time of her applications, Tollett was 47 years old. (Tr. 252.) Tollett has a high school education and work experience as a certified nursing assistant. (Tr. 240.) The conditions upon which Tollett based her DIB and SSI applications are back problems, arthritis, leg pain, diabetes, thyroid issues, high blood pressure, depression, and allergies. (Tr. 239.) Tollett claims she is disabled because she suffers from severe chronic pain.

Adult Function Reports completed in support of her applications describe Tollett's pain and discomfort as "unbearable." (Tr. 271.) According to Tollett, she suffers from pain in her back, legs, and knees when walking and also experiences shoulder and hand pain, which limits her ability to write and lift. (Tr. 250–57.) Tollett states in the Function Report that she is not independent in her activities of daily living due to the pain and needs help bathing, shaving, and brushing her hair; she also struggles to make it to the restroom alone. (Tr. 251, 271.) Tollett also explains that she uses a chair to wash dishes and prep meals due to difficulty standing. (Tr. 252.)

The Commissioner denied Tollett's applications on April 26, 2021, and again upon reconsideration on November 27, 2021. (Tr. 54–71, 92–111.) Following the denial of her claims, Tollett requested an administrative hearing. Tollett, her attorney, and a vocational expert ("VE") attended the administrative hearing before ALJ Penny Wilkov on August 25, 2022. (Tr. 35–53.) Tollett and the VE provided testimony at the hearing. (*Id.*) Tollett testified that she is unable to work due to pain in her knees, back, and arms and that she requires the help of her 14-year-old daughter in dressing and bathing due to the pain. (Tr. 41.) Tollett further testified that she can only walk for five minutes at a time due to knee pain, uses a cane for mobility around the house, and cannot carry even a gallon of milk due to weakness in her arms. (Tr. 42, 45.) Tollett also explained that she does not go out of the home often and does not socialize. (Tr. 44–45.)

The ALJ issued an unfavorable decision on September 26, 2022. (Tr. 13–29.) The ALJ found that Tollett met the insured-status requirements of the Social Security Administration ("SSA") and applied the five-step sequential analysis required by SSA regulations. At step one of the analysis, the ALJ found that Tollett has not engaged in substantial gainful activity since March 1, 2020, the alleged disability onset date. (Tr. 18.) At step two, the ALJ found Tollett to have the severe impairments of osteoarthritis of the left knee, degenerative disc disease of the lumbar spine with mild scoliosis, depressive disorder, diabetes mellitus, and obesity. (Tr. 18–19.) The ALJ found Tollett's heart palpitations, hypertension, carpal tunnel syndrome, and tennis elbow to be non-severe. (Tr. 19.)

At step three, the ALJ found that Tollett's impairments do not meet or medically equal the severity of one of the listed impairments in the applicable Social Security regulations to render her presumptively disabled. (Tr. 19–21.) In considering Listing 12.04, which addresses depressive, bipolar, and related disorders, the ALJ applied SSA's psychiatric review technique,

which evaluates a claimant's abilities in four broad functional areas: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. § 404.1520a(c)(3); 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The ALJ found Tollett to have moderate limitations in all four functional areas. (Tr. 20.)

Before reaching step four of the analysis, the ALJ found Tollett retains the RFC to perform light work with certain additional non-exertional and mental limitations. (Tr. 21.) As to physical limitations, Tollett can never climb ropes, ladders, or scaffolds, and she can only occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. (*Id.*) As to mental limitations, Tollett can understand, carry out, and remember detailed but not complex instructions; she can sustain concentration and persistence for periods of two hours at a time; she can have frequent interactions with coworkers, supervisors, and the public; she can tolerate routine changes to the work setting; but she cannot perform work requiring a specific production rate, such as assembly-line work or other work requiring hourly quotas. (*Id.*)

At step four, the ALJ found that Tollett is unable to perform her past relevant work as a certified nursing assistant. (Tr. 27–28.) At step five, the ALJ concluded that considering Tollett's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform, such as cafeteria's assistant, cleaner, and officer helper. (Tr. 28–29.) Accordingly, the ALJ determined that Tollett is not disabled for purposes of the Act, and therefore not entitled to receive DIB or SSI. (*Id.*) Tollett requested review of the ALJ's decision, but her request for review was denied by the Appeals Council. (Tr. 1–12.) Tollett thereafter filed the instant case, seeking review of the administrative determination.

## III. Analysis

Tollett argues the ALJ erred in failing to account for the total limiting effects of her severe and non-severe impairments. Tollett's appeal is essentially a challenge to the ALJ's RFC; she argues that the overall medical evidence establishes greater limitations than found by the ALJ, and the RFC is not supported by substantial evidence. In making these arguments, Tollett focuses on several specific issues. First, she argues that the ALJ's conclusion that her cane use is not medically necessary is erroneous because there is no logical bridge between the ALJ's finding and the medical evidence. Second, Tollett argues the ALJ did not reasonably conclude that she could perform jobs requiring the frequent use of her upper extremities in reaching, handling, and fingering, and all three jobs identified at step five in the ALJ's opinion contain this requirement. Third, Tollett claims that the ALJ improperly discounted the medical source statements from Physician's Assistant Benjamin Rhame. Fourth, Tollett argues the ALJ did not reasonably conclude that she could sustain full-time employment. Finally, Tollett argues the ALJ failed to properly evaluate her subjective symptom testimony under the governing regulations. For the reasons that follow, the Court finds that none of these arguments give rise to reversible error, and substantial evidence supports the ALJ's RFC determination that Tollett can perform modified light work.

### A. Legal Standards Governing RFC Determination

An RFC determination is the most an individual can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). In assessing a claimant's RFC, the ALJ must consider all the evidence in the record, including the limiting effects of all documented impairments, regardless of whether those impairments are severe or non-severe. *Id.* § 404.1545(a)(1)–(3). The relative weight given to the evidence contained in the record is within the ALJ's discretion. *Chambliss v. Massanari*,

269 F.3d 520, 523 & n.1 (5th Cir. 2001) (per curiam). To that end, the ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988) (per curiam). Furthermore, "RFC determinations are inherently intertwined with matters of credibility, and the ALJ's credibility determinations are generally entitled to great deference." *Acosta v. Astrue*, 865 F. Supp. 2d 767, 790 (W.D. Tex. 2012) (citing *Newton*, 209 F.3d at 459 (internal quotation omitted)).

However, the ALJ's discretion is not boundless; she must still build a "logical bridge" between the medical evidence and the ultimate RFC determination. *Price v. Astrue*, 401 Fed. App'x 985, 986 (5th Cir. 2010). If the ALJ's stated reasons for reaching her conclusion could not be accepted by "a reasonable mind," there is not substantial evidence to support the ALJ's denial of benefits. *Newton*, 209 F.3d at 452. Furthermore, an unsupportable RFC determination may not be saved by post-hoc justifications offered by the Commissioner; "[t]he ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Id.* at 455.

**B. Cane Use**

Tollett argues that the ALJ did not reasonably conclude that she did not need a cane for mobility and erred in not presenting her use of a cane to the VE to determine whether it would erode the occupational base of jobs identified in the national economy that Tollett is capable of performing. Here, the medical records reflect that Tollett's treating PA, Benjamin Rhame, provided her with a cane in October 2021 for her knee arthritis. (Tr. 778.) Several records also reference Tollett's use of a cane for mobility both before and after this date. In March 2021, consulting psychologist, Sean G. Connolly, noted that Tollett reported to his examination using a cane for balance and to avoid falls. (Tr. 511–12.) In May 2022, PA Rhame noted that Tollett

continued to use the cane for support. (Tr. 768.) At a visit with Dr. Parachur Nivedita that same month, treatment notes also indicate that Tollett reported using a cane. (Tr. 946.) The ALJ's opinion acknowledged that PA Rhame recommended a cane for Tollett but concluded that the physical examinations in the medical records did not support a finding that the cane was medically necessary. (Tr. 25.) And, as Tollett points out in her brief, the ALJ did not solicit testimony from the VE regarding the effect of cane use on her employability or include the cane use in her RFC.

Tollett's argument regarding cane use is based on SSR 96-9p, in which SSA addresses hand-held assistive devices. *See* Policy Interpretation Ruling Titles II and XVI: Determining Capability to Do Other Work—Implications of a Residual Functional Capacity for Less than a Full Range of Sedentary Work, SSR 96–9p, 1996 WL 374185, at *7 (S.S.A. July 2, 1996). In this opinion, SSA states that "[t]o find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device . . . and describing the circumstances for which it is needed . . . ." *Id.* SSA further explains that where a claimant "must use such a device for balance because of significant involvement of both lower extremities (e.g., because of a neurological impairment)," the occupational base "may be significantly eroded." *Id.* In such circumstances, SSA directs its decisionmakers "to consult a vocational resource in order to make a judgment regarding the individual's ability to make an adjustment to other work." *Id.* Tollett argues the ALJ failed to adequately apply SSR 96-9p because she never mentioned the ruling, discussed the evidence in light of the ruling, or presented her cane use to the VE for testimony. This argument has no merit.

First, an ALJ's failure to cite an applicable Social Security Ruling does not establish reversible error "in the absence of any showing that the decision is materially inconsistent with

the regulation." *Montez v. Kijakazi*, No. EP-23-CV-00155-ATB, 2023 WL 8879266, at *5 n. 12 (W.D. Tex. Dec. 22, 2023) (internal quotation and citation omitted). Second, SSR 96-9p does not stand for the proposition that any evidence in the record regarding cane use requires the ALJ to solicit VE testimony on whether the use of an assistive device erodes the occupational base. Per the SSA ruling, such testimony is only required where the evidence establishes that a hand-held assistive device is "medically required." Third, this is not a case in which the ALJ ignored the medical evidence regarding Tollett's cane use. To the contrary, the ALJ expressly acknowledged that there is evidence in the record that PA Rhame gave Tollett a cane as part of his treatment of Tollett's knee impairments. (Tr. 25.) Yet the ALJ concluded that the totality of the medical records did not support a finding of medical necessity as to the cane use. Accordingly, the only question before the Court is whether substantial evidence supports the ALJ's determination that the cane was not medically required.

The ALJ provided a fairly extensive discussion of Tollett's knee arthritis in her opinion, noting that Tollett suffers from arthritis in her knees and that based on her BMI ranging from 49.61 to 53.07, is considered to be "morbidly obese"—a dangerously overweight category of obesity. (Tr. 25, 711, 953.) The ALJ referenced x-ray studies of Tollett's left knee in November 2020, which noted some "joint space narrowing," and of both knees in July 2021, which found "a degree of narrowing" of the joints and some "minimal lateral subluxation." (Tr. 25, 470, 528.) The ALJ also discussed the interpretation of the 2021 x-rays by Dr. Hall, an orthopedist, on July 21, 2021. (Tr. 25, 724.) Dr. Hall acknowledged that the arthritis of the knees and interpreted the x-rays as depicting "marked" narrowing of her knee joints but treated the severity of her knee pain more as a symptom of her obesity. (Tr. 724–25.) Dr. Hall instructed Tollett to lose weight and to perform quadricep strengthening exercises. (Tr. 725.) There is no reference

to cane use in Dr. Hall's records or a recommendation that Tollett use a cane for mobility, though Dr. Hall did note that Tollett presented with an antalgic gait. (Tr. 724.) Finally, the ALJ noted that Tollett was evaluated at a hospital visit for an abscess removal on October 18, 2021 (the same month and year when PA Rhame provided her with the cane), and was described as ambulating independently, having a normal and steady gait, and being a low fall risk. (Tr. 25, 857, 904.) Another physical examination in 2021 noted knee tenderness but normal range of motion, no edema, and no specific instability. (Tr. 25, 544.) Notably, PA Rhame's examination from October 2021—in which he provided Tollett with the cane—did not specify any finding of instability either and recommended continued weight loss and physical and exercise therapy. (Tr. 777.) Moreover, his notes indicate he "provided" Tollett with a cane, not that he was prescribing the medically necessary use of a cane. (Tr. 778.) In May 2022, PA Rhame explained to Tollett that she was a poor surgical candidate for knee surgery due to her BMI and recommended that she continue to focus on weight loss. (Tr. 770.)

Based on a review of these medical records and the ALJ's opinion, the Court finds substantial evidence to support the ALJ's determination that the cane was not medically necessary. At best, there is conflicting evidence in the record on the use of an assistive device by Tollett and its necessity, and the ALJ had the authority to weigh the evidence and resolve it against Tollett. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Chaparro v. Bowen*, 815 F.2d 1008, 1011 (5th Cir. 1987). The ALJ did not err in evaluating Tollett's cane use or in the application of SSR 96-9p.

**C. Manipulative Limitations**

Tollett argues the ALJ did not reasonably conclude that she could perform jobs requiring the frequent use of her upper extremities in reaching, handling, and fingering, and all three jobs

identified at step five in the ALJ's opinion contain this requirement. In her opinion, the ALJ addressed Tollett's left shoulder and elbow pain, as well as her complaints of carpal tunnel syndrome, but concluded that the record did not support reaching or manipulative limitations. (Tr. 25.) The Court also finds this conclusion is supported by substantial evidence and was not the product of any reversible legal error.

First, Tollett argues that the ALJ erred in concluding that her carpal tunnel syndrome was only documented by a "provisional, informal diagnosis" because this assessment involved the improper substitution of the ALJ's opinion for that of a physician. The undersigned disagrees. The only reference to carpal tunnel syndrome in the medical records is PA Rhame's notation from the October 2021 visit (at which he provided her with a cane) that he also provided Tollett with a wrist brace to be used at night for "her suspected left carpal tunnel syndrome." (Tr. 778.) PA Rhame further noted that he would like Tollett's primary care physician to refer her back to his clinic for her left elbow and carpal tunnel should she need to pursue further treatment. (*Id.*) There is no further evidence of additional testing or diagnosis of carpal tunnel syndrome after this notation.

The ALJ relied on the limited nature of the reference to carpal tunnel syndrome in the record and the lack of any evidence of actual diagnostic testing on the condition to determine that the record did not support manipulation limitations. (Tr. 25.) Tollett has not directed the Court to any evidence documenting manipulative limitations in Tollett's hands that was ignored by the ALJ. That Tollett generally complained of pain in her upper extremities at various appointments throughout the medical records does not undermine the ALJ's concerns regarding the lack of any comprehensive findings regarding the cause of that pain and the manipulative limitations stemming from that pain. Additionally, the record contains findings from a consultative

examination by Dr. Doug Buchanan in November 2020 documenting that Tollett had normal grip strength, normal handling and fingering, and strong handgrips. (Tr. 464–65.) Although this exam was performed approximately one year before the visit with PA Rhame, it does provide some evidence that Tollett's manipulative capabilities were not compromised, such that limitations in handling and fingering would be required.

There is more documentation of Tollett's tennis elbow and left shoulder pain, which she alleges affects her ability to reach overhead. In addressing this issue, the ALJ cited a June 2021 x-ray of Tollett's elbow, which found no fracture or dislocation, no joint effusion, and only early degenerative changes "of the ulnotrochlear articulation." (Tr. 25, 525.) The ALJ also noted that in 2021 PA Rhame found tenderness at Tollett's left elbow and decreased sensation at the left median nerve and referred her to occupational therapy, while noting that the wrist brace he provided would provide her some relief. (Tr. 25, 777–78.) At a later visit in May 2022, PA Rhame noted Tollett was only "mildly tender" to palpation over the lateral elbow, had some pain with wrist flexion against resistance, but had intact nerve sensation on the upper extremities. (Tr. 769.) In that visit, PA Rhame did not recommend further steroid injections and explained to Tollett that her tennis elbow "should continue to improve" so long as she maintains consistency with her home physical therapy. (Tr. 770.) Relying on this evidence, the ALJ reasonably concluded that Tollett had not carried her burden to establish that she suffered from reaching limitations.

**D. PA Rhame Medical Source Statements**

The record reflects that PA Rhame completed a one-page medical source statement on May 4, 2022, which opined that due to Tollett's bilateral knee osteoarthritis and left tennis elbow she would be off task for 25 percent or more of a typical workday and absent three or more days

per month. (Tr. 878.) PA Rhame completed a second one-page medical source statement on August 22, 2022, reiterating these opinions and concluding that Tollett can never lift any weight of any amount or stand or walk for more than five minutes. (Tr. 1012.) The ALJ found these opinions to be unpersuasive due to being inconsistent with the overall record. (Tr. 26–27.) Tollett claims that the ALJ improperly discounted the medical source statements because there is no logical bridge between her rejection of the statements and the medical evidence. Again, the undersigned disagrees.

PA Rhame's medical source statements are single-page, check-box forms without supporting explanation. The ALJ has discretion to conclude that these limited opinions did not outweigh other substantial evidence supporting the conclusion that Tollett's impairments resulted in less severe limitations. *See DeJohnette v. Berryhill*, 681 Fed. App'x 320, 321–22 (5th Cir. 2017). Overall, it was reasonable for the ALJ to conclude that, based on a review of Rhame's notes from his treatment of Tollett from October 2021 to May 2022, there was inadequate support for the extreme limitations documented in Rhame's medical source statements. *See* 20 C.F.R. § 404.1520c (explaining that Commissioner is no longer required to give controlling weight to treating medical opinions).

As required by SSA's rules and regulations, the ALJ considered PA Rhame's medical opinions for persuasiveness. *See id.* § 416.920c. Again, as noted above, the ALJ explained that Rhame himself documented that he expected Tollett's elbow epicondylitis to resolve on its own. (Tr. 770.) Also, the ALJ found significant that there is minimal documentation of any carpal tunnel syndrome in the record. (Tr. 778.) Tollett has not directed the Court to documentation in Rhame's records supporting a finding that Tollett has no ability to lift any object of any weight for any period of time. Rhame's primary recommendations for Tollett throughout his treatment

notes are for occupational therapy, physical therapy, exercise therapy, and weight loss. (Tr. 770, 780.) Tollett was at times non-compliant with these recommendations due to issues with transportation to appointments and childcare responsibilities as to her grandchildren. (Tr. 768, 772.)

Rhame's records are not clear about the basis for his finding that Tollett would be off task for over 25 percent of the workday. Records from October 2020 indicate that Tollett reported that she prefers to stay at home and not work but that she was considering changing professions to do computer work or working from home, as she would not have a problem with the ability to think or multitask or with computer skills as opposed to the physical challenges of continuing her work as a nursing assistant. (Tr. 473–74.) Additionally, the ALJ emphasized in her opinion that Tollett stated in her disability application that she stopped working not due to disability but due to incidents at work unrelated to her impairments. (Tr. 26, 239, 511.)

In summary, there is substantial evidence to support the ALJ's rejection of PA Rhame's two medical source statements, and the ALJ did not commit any reversible error in finding that these opinions were not supported by his own treatment history and inconsistent with the overall treatment record.[2]

**E. Subjective Symptom Testimony**

Finally, Tollett argues that the ALJ failed to properly evaluate her subjective symptom testimony under the governing regulations. The regulations provide that when making a

[2] This conclusion also resolves Tollett's related argument that the ALJ did not reasonably conclude that she could perform full-time employment on a continuous and sustained basis. Tollett does not develop this argument well in her brief, but insofar as she is arguing she would be off-task due to her limitations, the Court finds substantial evidence to support the ALJ's conclusion that Tollett did not carry her burden to demonstrate her impairments prevented her from working full-time. In doing so, the Court notes that the ALJ's RFC determination limits Tollett to sustaining concentration and persistence for only two hours at a time and precludes her from any work requiring a specific production rate. (Tr. 21.)

disability determination, the adjudicator must consider subjective symptoms, including pain, and the extent to which those symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529(a). The ALJ is required to follow a two-step "objective-subjective" process in evaluating the claimant's subjective evidence and the applicant's credibility if a credibility determination is necessary. *See Salgado v. Astrue*, 271 Fed. App'x 456, 458 (5th Cir. 2008) (per curiam).

At step one, the ALJ determines whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *See* Titles II & XVI: Evaluation of Symptoms in Disability Claims, SSR 16-3P, 2017 WL 5180304, at *3 (S.S.A. Oct. 25, 2017). At step two, the ALJ evaluates the intensity and persistence of an individual's symptoms such as pain and determines the extent to which the symptoms limit the claimant's ability to perform work-related activities. *Id.* at *4. In considering the intensity, persistence, and limiting effects of an individual's symptoms, the ALJ examines the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record. *Id.* The governing regulations include several specific factors to be considered when evaluating alleged symptoms, such as pain: (1) daily activities; (2) location, duration, frequency and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and (7) other

factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3).

According to Tollett, the ALJ failed to articulate why she rejected Tollett's testimony regarding the intensity, persistence, and limiting effects of her symptoms and engaged in a highly selective recitation of the medical records. Tollett alleges that she is limited to sedentary work due to her obesity and degenerative joint disease. Again, Tollett states in her Adult Functions Reports that she uses a chair to wash dishes and to prep meals due to difficulty standing and cannot carry a gallon of milk due to arm weakness. (Tr. 252.) She testified at the ALJ's hearing that she requires assistance from her daughter to dress and bathe due to pain, can only walk five minutes at a time due to knee pain, and uses a cane for mobility around the house. (Tr. 41–42, 45.)

The ALJ acknowledged these subjective allegations in her opinion but found them to be inconsistent with the overall medical evidence. (Tr. 22.) The ALJ provided the following reasons for finding Tollett's allegations not credible as to her inability to perform light work requiring significant standing: (1) the medical records do not support the medical necessity of a cane (for the reasons discussed above) (Tr. 25); (2) the record does not show loss of motor strength or sensation or radiculopathy (*id.*); (3) PA Rhame opined that Tollett's elbow epicondylitis would resolve on its own if Tollett followed through with therapy recommendations (*id.*); and (4) Tollett stopped working due to incidents unrelated to her impairments (Tr. 26).

Although the ALJ must explain her reasons for rejecting a claimant's complaints of pain, she is not required to "follow formalistic rules" in her articulation. *See Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). That said, it is not sufficient for an ALJ to make a single conclusory

statement that the allegations of a claimant have been considered and are not credible or simply recite the factors described in the regulations without discussion. SSR 16-3P, 2017 WL 5180304, at *10. "The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* The ALJ provided specific reasons for not crediting the extent of Tollett's claimed symptoms consistent with the requirements of the governing regulations.

Tollett does argue in her brief that one of the ALJ's stated reasons, however, constituted a misrepresentation of the medical records. Tollett argues that the ALJ's conclusion that the record did not show loss of motor strength or sensation or radiculopathy is false, citing records of radiating back pain into the leg (Tr. 462), absent deep tendon reflexes (Tr. 465), left-sided sciatica (Tr. 708), and radicular symptoms (Tr. 708, 766). True, Dr. Buchanan's consultative examination in November 2020 documents that Tollett's deep tendon reflexes (Achilles, patellar, and biceps) were absent, meaning Tollett may have some nerve issue. (Tr. 465). However, in the same assessment, Dr. Buchanan concluded that she had normal sensation and 4 to 5/5 grip and motor strength, which is consistent with the ALJ's finding of no documented loss of motor strength or sensation. (*Id.*) As to radiculopathy, Tollett is correct; there are records that Tollett was being treated with physical therapy for left-side sciatica and back radicular pain from October 2020 to January 2021 (Tr. 681–710.) On her last visit of record, however, Tollett reported she was doing well and feeling better. (Tr. 682.) Based on these records, Tollett has not identified any reversible error with respect to the ALJ's assessment of her subjective symptoms.

In summary, the Court agrees with Tollett that there is significant evidence in the record documenting ongoing complaints about pain related to her osteoarthritis and other issues. However, Tollett has not identified any reversible legal error in the ALJ's RFC determination, and Tollett's arguments ultimately amount to a request to reweigh the evidence and find that she is limited to sedentary work due to her obesity and osteoarthritis and periodic cane use. However, this Court is not permitted to assume the role of the ALJ and engage in this inquiry anew. The threshold for substantial evidence is "not high." *Biestek v. Berryhill*, 587 U.S.--, 139 S. Ct. 1148, 1154 (2019). Because the ALJ identified "relevant evidence" that "a reasonable mind might accept as adequate to support" her conclusion, her decision is supported by substantial evidence and may not be disturbed by this Court on appeal. *Id.*

**IV. Conclusion**

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's RFC determination. Additionally, Tollett has not identified any reversible error in the underlying proceedings. Accordingly,

**IT IS HEREBY ORDERED** that the Commissioner's decision finding that Plaintiff is not disabled is **AFFIRMED**.

SIGNED this 13th day of March, 2024.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE